<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SOON JA KANG<br><br>    *Plaintiff*,<br><br>v.<br><br>LA FITNESS, LA FITNESS OF SOUTH PLAINFIELD, JOHN DOES 1–5, et al.,<br><br>    *Defendants*. | Civil No.: 2:14-cv-07147 (KSH) (CLW)<br><br><u>OPINION</u> |

**Katharine S. Hayden, U.S.D.J.**

  Before the Court is defendants' motion for summary judgment as to the validity and enforceability of an exculpatory clause in a fitness center membership agreement with plaintiff. For the reasons set forth below, the Court finds the liability waiver to be valid and enforceable and defendants' motion is granted.

**I.  Background**

  Fitness International, LLC d/b/a LA Fitness (incorrectly designated as LA Fitness of South Plainfield) ("LA Fitness") operates a fitness facility located in Piscataway, NJ. *See* Final Pretrial Order Stipulation of Facts ("SOF") (D.E. 19), at ¶ 1. On December 30, 2013, plaintiff Soon Ja Kang went to LA Fitness with her husband to sign up for membership. *Id.* at ¶ 2. The membership agreement she signed states in relevant part:

> IMPORTANT: RELEASE AND WAIVER OF LIABILITY AND INDEMNITY. You hereby acknowledge and agree that use by Member and/or Member's minor children of LA Fitness' facilities, services, equipment or premises, involves risks of injury to persons and property, including those described below, and Member

1

assumes full responsibility for such risks. In consideration of Member and Member's minor children being permitted to enter any facility of LA Fitness (a "Club") for any purpose including, but not limited to, observation, use of facilities, services or equipment, or participation in any way, Member agrees to the following: Member hereby releases and holds LA Fitness, its directors, officers, employees, and agents harmless from all liability to Member, Member's children and Member's personal representatives, assigns, heirs, and next of kin for any loss or damage, and forever gives up any claim or demands therefore, on account of injury to Member's person or property, including injury leading to the death of Member, whether caused by the active or passive negligence of LA Fitness or otherwise, to the fullest extent permitted by law, while Member or Member's minor children are in, upon, or about LA Fitness' premises or using any LA Fitness facilities, services or equipment. Member also hereby agrees to indemnify LA Fitness from any loss, liability, damage or cost LA Fitness may incur due to the presence of Member or Member's children in, upon or about the LA Fitness premises or in any way observing or using any facilities or equipment of LA Fitness whether caused by the negligence of Member(s) or otherwise. You represent (a) that Member and Member's minor children are in good physical condition and have no disability, illness, or other condition that could prevent Member(s) from exercising without injury or impairment of health, and (b) that Member has consulted a physician concerning an exercise program that will not risk injury to Member or impairment of Member's health. Such risk of injury includes (but is not limited to): injuries arising from use by Member or others of exercise equipment and machines; injuries arising from participation by Member or others in supervised or unsupervised activities or programs at a Club; injuries and medical disorders arising from exercising at a Club such as heart attacks, strokes, heat stress, sprains, broken bones, and torn muscles and ligaments, among others; and accidental injuries occurring anywhere in Club dressing rooms, showers and other facilities. Member further expressly agrees that the foregoing release, waiver and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the State of New Jersey and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full force and effect. Member has read this release and waiver of liability and indemnity clause, and agrees that no oral representations, statements or inducement apart from this Agreement has been made.

LA Fitness Moving Br., Exh. E (D.E. 22-7).

Kang and her husband do not read or understand English, but their daughter was present to translate for them when they signed up. *See* SOF, at ¶¶ 4–5. Kang signed a membership agreement. She did not initial next to the waiver and liability provision in her membership agreement; however, her husband was asked to initial next to the same provision in his membership agreement, and he did so. *Id.* at ¶ 6.

On December 31, 2013, Kang was injured while working out on a chin/dip assist pull up machine at LA Fitness's Piscataway location. *See* SOF, at ¶¶ 2, 7. She filed the instant action on September 29, 2014 in state court, and LA Fitness filed a notice of removal in this Court on November 14, 2014 on the basis of diversity jurisdiction (D.E. 1). The complaint alleges that Kang was injured as a result of negligence on the part of LA Fitness. *Id.* Prior to completion of expert discovery, LA Fitness moved for summary judgment on the issue of whether the waiver and liability provision bars the instant action. The motion was fully briefed. (D.E. 22, 25, 26).

The Court makes its decision on the paper.

## II. Discussion

### A. Standard

Summary judgment is warranted where the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). The parties have conducted discovery on the circumstances surrounding the formation of Kang's membership agreement and, as set forth in the analysis below, all facts relevant to the enforceability of the waiver provision are essentially undisputed as set forth in the Final Pretrial Order Stipulation of Facts (D.E. 19). In determining whether the waiver provision is enforceable as a matter of law, the Court "view[s] the evidence in the light

most favorable to [Kang] and draw[s] all justifiable, reasonable inferences in [her] favor." *Sgro v. Bloomberg L.P.*, 331 F. Appx. 932, 937 (3d Cir. 2009).

### B. Analysis

Pursuant to the release and waiver of liability provision in her membership agreement, Kang released and held LA Fitness harmless for all injuries she might suffer "whether caused by the active or passive negligence of LA Fitness or otherwise," while she was "in, upon, or about LA Fitness' premises or using any LA Fitness facilities, services or equipment." LA Fitness Moving Br., Exh. E (D.E. 22-7). As her negligence claim for an injury allegedly sustained while using a piece of workout equipment at an LA Fitness facility clearly falls within the ambit of the liability waiver, the issue becomes whether the waiver itself is enforceable against Kang on the facts of this case.

In *Stelluti v. Casapenn Enterprises, LLC*, 408 N.J. Super. 435, 454 (App. Div. 2009), *aff'd*, 203 N.J. 286 (2010), the New Jersey Appellate Division addressed the enforceability of exculpatory releases in fitness center membership agreements:

> Such a release is enforceable only if: (1) it does not adversely affect the public interest; (2) the exculpated party is not under a legal duty to perform; (3) it does not involve a public utility or common carrier; or (4) the contract does not grow out of unequal bargaining power or is otherwise unconscionable.

*Id.* The third factor is inapplicable here, because LA Fitness is not a public utility or common carrier. *See* Kang Opp. Br., at p. 6. The Court analyzes the remaining *Stelluti* factors in turn.

### 1. Does the Exculpatory Clause Adversely Affect the Public Interest?

LA Fitness argues that the exculpatory clause in this case does not adversely affect the public interest because it is "a facility that encourages New Jersey's public policy promoting physical fitness." LA Fitness Moving Br., at p. 6. Noting the important policy objective of promoting public health, the *Stelutti* court held:

4

> [W]e are satisfied that, at least with respect to equipment being used at the club in the course of an exercise class or other athletic activity, the exculpatory agreement's disclaimer of liability for ordinary negligence is reasonable and not offensive to public policy.

*Stelluti*, 408 N.J. Super. at 459.  The Court agrees with the analysis in *Stelluti* and finds that the exculpatory clause here does not adversely affect the public interest, at least to the extent that it purports to exculpate LA Fitness with respect to acts or omissions amounting to ordinary negligence.

Kang argues that public policy promoting physical fitness "cannot counteract the other public policy reasons that are in place to protect against improper liability waivers."  Kang Opp. Br., at p. 7.  To that end, she argues that the release in this case violates the New Jersey Plain Language Act, which states that "[a] consumer contract entered into on or after the effective date of this amendatory and supplementary act shall be written in a simple, clear, understandable and easily readable way."  *N.J. Stat. Ann.* § 56:12-2.  Specifically, Kang argues that the small font size and margins in the contract are such that "[s]omeone who can read and understand English would be substantially confused by this agreement[.]"  Kang Opp. Br., at p. 8.

To determine whether the waiver provision violates the Plain Language Act, the Court turns to the plain language of the act itself.  Section 56:12-10 provides:

> To insure that a consumer contract shall be simple, clear, understandable and easily readable, the following are examples of guidelines that a court . . . may consider in determining whether a consumer contract as a whole complies with this act:
>
> (1) Cross references that are confusing;
> (2) Sentences that are of greater length than necessary;
> (3) Sentences that contain double negatives and exceptions to exceptions;
> (4) Sentences and sections that are in a confusing or illogical order;
> (5) The use of words with obsolete meanings or words that differ in their legal meaning from their common ordinary meaning;
> (6) Frequent use of Old English and Middle English words and Latin and French phrases.

5

N.J. Stat. Ann. § 56:12-10.  Section 56:12-10 further provides:

> The following are examples of guidelines that a court . . . may consider in determining whether the consumer contract as a whole complies with this act:
>
> (1) Sections shall be logically divided and captioned;
> (2) A table of contents or alphabetical index shall be used for all contracts with more than 3,000 words;
> (3) Conditions and exceptions to the main promise of the agreement shall be given equal prominence with the main promise, and shall be in at least 10 point type.

*Id*.  A Court has discretion as to how much consideration should be given to the above-listed statutory guidelines in finding a violation of the act.  *See Boddy v. Cigna Prop. & Cas. Companies*, 334 N.J. Super. 649, 655 (App. Div. 2000).

Reviewing Kang's membership agreement in light of the above guidelines, the Court finds that the waiver provision does not violate the New Jersey Plain Language Act.  The waiver provision does not contain any cross references, nor does it contain any double negatives or exceptions to exceptions.  It does not contain words with obsolete meanings, nor is it clouded by the use of Old English, Middle English, Latin or French phrases.  And Kang does not argue—nor does the Court find—that the sentences of the waiver provision are set forth in a confusing or illogical order.

Instead, Kang argues that the waiver provision violates the Plain Language Act because "[t]he size of the font (print) is about size 8, whereas the standard size used in everyday documents is size 12[,]" and because "[t]he margins on the sides of the pages are about 0.5 inch . . . reflecting the intentions of the drafter to squeeze in additional words."  Kang Opp. Br., at p. 8.  However, applying the above guidelines, the Court does not find that the waiver provision in this case is any less prominent that the remainder of the agreement.  *See* N.J. Stat. Ann. § 56:12-10b(3).  To the contrary, the waiver and liability provision is the only clause in the membership

agreement preceded by a title in all caps ("IMPORTANT: RELEASE AND WAIVER OF LIABILITY AND INDEMNITY"), and it is the only clause that is fully enclosed by a border, creating a visual separation between the waiver and the rest of the agreement.

The Court finds that the waiver provision in this case does not offend public policy under *Stelluti* and does not otherwise violate the New Jersey Plain Language Act.

**2. Is LA Fitness Under a Legal Duty To Perform?**

LA Fitness argues that its relationship with Kang does not create any duties prescribed by statute or regulation. *See* LA Fitness Moving Br., at pp. 6–8. New Jersey courts have found liability waivers to be invalid as against public policy where they conflict with legislatively imposed duties. For example, in *Hy-Grade Oil Co. v. New Jersey Bank*, 138 N.J. Super. 112, 118 (App. Div. 1975), the court found it against public policy for a bank to exculpate itself from liability or responsibility for negligence in the performance of its function as a night depository service, in part due to the "extensive statutory regulations covering every phase of the banking business[.]" *Id.* at 118. Similarly, in *McCarthy v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 48 N.J. 539, 543 (1967), the New Jersey Supreme Court held a liability waiver invalid as against public policy because it purported to contract away safety requirements prescribed by statute dealing with motor vehicle racing. *See id*. at 543 ("[t]he prescribed safety requirements may not be contracted away, for if they could be the salient protective purposes of the legislation would largely be nullified").

Kang argues that "although there are no statutes specific to fitness centers, there are several national associations that have established standards that apply to the fitness industry[.]" Kang Opp. Br., at pp. 8–9. However, there is no indication that these national standards apply with the force of law in New Jersey so as to constitute public policy of the state. Kang further

argues that the *Stelluti* court acknowledged the well-established duties of care that New Jersey business owners owe to patrons that enter their premises. *See* Kang Opp. Br., at p. 8. However, as noted above in Part B.1. *supra*, *Stelluti* expressly held that fitness center liability waivers such as the one at issue here do not violate public policy at least to the extent that they exculpate for ordinary negligence. *Stelluti*, 408 N.J. Super. at 459. The Court finds that LA Fitness is not under any legal duty that precludes its reliance on the liability waiver in this case.

### 3. Does the Contract Grow Out of Unequal Bargaining Power or is it Otherwise Unconscionable?

With respect to the final *Stelluti* factor, Kang argues that the waiver: (1) was not the product of mutual assent; and (2) is unconscionable as a term in a contract of adhesion. *See* Kang Opp. Br., at pp. 10–14. The Court addresses both arguments in turn.

#### a. Mutual Assent

Kang argues that the waiver was invalid for lack of mutual assent, based upon the following assertions: (1) Neither Kang nor her husband speaks English; (2) LA Fitness knew as much, as the Kangs' daughter was present to translate; (3) an LA Fitness employee explained the contract duration and payment terms to the Kangs' daughter, but did not explain the liability waiver to her; (4) only Kang's husband was asked to initial next to the waiver provision in his membership agreement, but no one explained to him what he was initialing; and (5) no employee went over the waiver provision with Kang or her daughter. *See* Kang Opp. Br., at pp. 10–11. Accordingly, Kang argues that she did not "clearly, unequivocally, and decisively surrender[ ] her rights" as is required for a valid waiver. *Id.* at p. 11.

The Court finds these arguments unavailing. As an initial matter, Kang's inability to speak English does not bar her from becoming contractually bound. Notwithstanding the fact that her daughter was present to translate, New Jersey courts have unequivocally held that in the

8

absence of fraud, one who signs an agreement is conclusively presumed to understand and assent to its terms and legal effect:

> In the absence of fraud or imposition, when one fails to read a contract before signing it, the provisions are nevertheless binding, and the party is conclusively presumed to understand and assent to its terms and legal effect . . . . Even illiterate individuals have been held bound by a signed contract in the absence of misrepresentation. One who signs a document in those circumstances should know its contents or have it read (or otherwise have the contents made known) to him or her.

*Statewide Realty Co. v. Fid. Mgmt. & Research Co.*, 259 N.J. Super. 59, 73 (Law. Div. 1992) (internal citations and quotations omitted); *see also Herrera v. Twp. of S. Orange Vill.*, 270 N.J. Super. 417, 423, 637 (App. Div. 1993) (enforcing release agreement in the absence of fraud, notwithstanding testimony by plaintiff that she did not understand the release because she could not read English).

Under the New Jersey case law cited above, absent allegations of fraud, deceit, or misrepresentation which Kang does not make here, she is conclusively presumed to have understood and assented to the membership agreement's terms—including the waiver—and legal effect. *See Stelluti v. Casapenn Enterprises, LLC*, 203 N.J. 286, 305 (2010) ("Although Stelluti argues that she did not know what she was signing, she does not claim that she signed the waiver form as the result of fraud, deceit, or misrepresentation. Therefore, the trial court was well within reason to presume that she understood the terms of the agreement . . . and the finding to that effect is unassailable.")

Nor does the fact that LA Fitness may not have explained the waiver to her or her daughter preclude enforcement. *See Stelluti v. Casapenn Enterprises, LLC*, 203 N.J. 286, 301–02 (2010) (enforcing exculpatory clause while giving plaintiff benefit of inference that

9

"Powerhouse may not have explained to Stelluti the legal effect of the contract that released Powerhouse from liability").

Finally, the Court is not aware of, nor has Kang cited, any requirement that she must have initialed the waiver provision for that clause to be enforceable against her. While she did not initial the waiver provision, she did sign the membership agreement containing it. In the absence of fraud, that is enough to bind her to its terms. *See Statewide*, 259 N.J. Super. at 73.

### b. Unconscionability

Kang also argues that even if the waiver is found to be enforceable, the Court should invalidate it as a contract of adhesion. "[T]he essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without the opportunity for the 'adhering' party to negotiate except perhaps on a few particulars." *Rudbart v. N. Jersey Dist. Water Supply Comm'n*, 127 N.J. 344, 353, 605 A.2d 681, 685 (1992). Kang's unconscionability argument is essentially an amalgamation of all of her arguments summarized above: that as someone who does not speak English she lacked the sophistication to understand the terms to which she was agreeing, LA Fitness knew that she was in no position to understand those terms, she did not initial next to the waiver provision, the waiver is one-sided and printed on a standard form agreement, and she was not in a position to negotiate the terms of the agreement. Kang Opp. Br., at pp. 12–14.

Notably, not all contracts of adhesion are unenforceable. In *Stelluti*, the New Jersey Supreme Court held:

> Here, Powerhouse's agreement was a standard pre-printed form presented to Stelluti and other prospective members on a typical 'take-it-or-leave-it basis.' No doubt, this agreement was one of adhesion. As for the relative bargaining positions of the parties, . . . we assume that Stelluti was a layperson without any specialized knowledge about contracts generally or exculpatory ones

10

> specifically. Giving her the benefit of all inferences from the record, including that Powerhouse may not have explained to Stelluti the legal effect of the contract that released Powerhouse from liability, we nevertheless do not regard her in a classic 'position of unequal bargaining power' such that the contract must be voided. As the Appellate Division decision noted, Stelluti could have taken her business to another fitness club, could have found another means of exercise aside from joining a private gym, or could have thought about it and even sought advice before signing up and using the facility's equipment. No time limitation was imposed on her ability to review and consider whether to sign the agreement. In sum, although the terms of the agreement were presented 'as is' to Stelluti, rendering this a fairly typical adhesion contract in its procedural aspects, we hold that the agreement was not void based on any notion of procedural unconscionability.

*Stelluti v. Casapenn Enterprises, LLC*, 203 N.J. 286, 301–02 (2010).

Like the defendant in *Stelluti*, Kang was a layperson without any specialized knowledge of exculpatory contracts, and the Court gives her the benefit of the inference that LA Fitness did not explain the legal effect of the waiver provision to her. However, also like the defendant in *Stelluti*, Kang was not under any undue pressure to execute the agreement and she could have sought advice before signing. Indeed, her daughter was present to translate. As noted above, the fact that Kang does not speak English does have any legal effect on the contract's enforceability. Thus, in accordance with *Stelluti*, the Court finds that although the LA Fitness membership agreement may have been offered on a "take-it-or-leave-it" basis, it is not void on the basis of unconscionability.

Because the exculpatory clause does not offend public policy, the Court finds it to be valid and enforceable. Accordingly, LA Fitness's motion for summary judgment is granted.

### III. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is **granted**, and the clerk of the court is direct to close this case. An accompanying Order will be filed.

s/ Katharine S. Hayden  
Katharine S. Hayden, U.S.D.J.

Dated: December 29, 2016